| | |
|---|---|
| 1 | MELINDA S. RIECHERT (STATE BAR NO. 65504) |
| 2 | JILLIAN V. KALTNER (STATE BAR NO. 324398)<br>ORRICK, HERRINGTON & SUTCLIFFE LLP |
| 3 | 1000 Marsh Road<br>Menlo Park, CA  94025-1015 |
| 4 | Telephone:     +1 650 614 7400<br>Facsimile:     +1 650 614 7401 |
| 5 | mriechert@orrick.com<br>jkaltner@orrick.com |
| 6 | Attorneys for Defendant |
| 7 | MARVELL SEMICONDUCTOR INC. |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES FIORENTINE,<br><br>            Plaintiff,<br><br>    vs.<br><br>MARVELL SEMICONDUCTOR INC.,<br><br>            Defendant. | Case No. 24-cv-01136-MMC<br><br>**NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND TO DISMISS, OR IN THE ALTERNATIVE, STAY PROCEEDINGS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: May 31, 2024<br>Time: 9:00 a.m.<br>Dept: 7<br>Judge: Hon. Maxine M. Chesney |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ........................................................................................................... 1
II. RELEVANT FACTS ...................................................................................................... 1
III. PROCEDURAL HISTORY ........................................................................................... 3
IV. ARGUMENT .................................................................................................................. 3
    A. The FAA and U.S. Supreme Court Mandate Enforcement of the Arbitration Agreement Here. ................................................................................................. 3
    B. Defendant MSI Is Entitled to Enforce the Arbitration Agreement ......................... 4
    C. The Agreement Is Enforceable Under the FAA and California Law...................... 7
        1. The Arbitration Agreement Covers the Plaintiff's Claims ......................... 7
        2. The Arbitration Agreement Is Otherwise Enforceable ............................... 8
            a. The Arbitration Agreement Complies With Armendariz................ 8
            b. The Agreement Is Not Unconscionable ......................................... 9
                (1) There Is Little to No Procedural Unconscionability ........... 9
                (2) There Is No Substantive Unconscionability...................... 10
    D. The Entire Litigation Must Be Dismissed............................................................. 10
V. CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

**Page**

**Federal Cases**

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011) .................................................................................................. 3, 4, 10

*Chamber of Commerce of the US, et al. v. Rob Bonta, et al.*,
    D.C. No. 2:19-cv-02456-KJM-DB (9th Cir. February 15, 2023) ............................................ 9

*Chiron Corp. v. Ortho Diagnostics Systems, Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ................................................................................................ 7

*Delmore v. Ricoh Americas Corp.*,
    667 F. Supp. 2d 1129 (N.D. Cal 2009) ................................................................................... 5

*Delmore v. Ricoh Americas Corp.*
    667F.Supp.2d 1129,1135 (N.D. Cal 2009) ............................................................................ 8

*Epic Systems Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ............................................................................................................ 9

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) .................................................................................................................. 9

*Hart v. Charter Commc'ns, Inc.*,
    814 F. App'x 211 (9th Cir. 2020) ............................................................................................ 5

*Howsam v. Dean Witter Reynolds, Inc.*
    537 U.S. 79 (2002) .................................................................................................................. 7

*Saxena v. Mittal*,
    2022 WL 4229310 (N.D. Cal. Sept. 13, 2022) ....................................................................... 6

*Shappell v. Sun Life Assurance Co.*,
    No. 2:10-cv-03020-MCE- EFB, 2011 WL 2070405 (E.D. Cal. May 23, 2011) .................... 10

*Sparling v. Hoffman Constr. Co.*,
    864 F.2d 635 (9th Cir. 1988) ................................................................................................ 10

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    130 S. Ct. 1758 (2010) ............................................................................................................ 4

**State Cases**

*24 Hour Fitness, Inc. v. Super. Ct.*,
    66 Cal. App. 4th 1199 (1998) .................................................................................................. 9

**TABLE OF AUTHORITIES**
(continued)

<mark>Page</mark>

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
    24 Cal.4th 83 (2000) .................................................................................................... 8, 10

*Bono v. David*,
    147 Cal. App. 4th 1055 (2007) ............................................................................................ 7

*Boucher v. Alliance Title Co., Inc.*,
    127 Cal.App.4th 262 (2005) ................................................................................................ 6

*Cruise v. Kroger Co.*
    233 Cal.App.4th 390 (2015) ................................................................................................ 7

*Dream Theater, Inc. v. Dream Theater*,
    124 Cal. App. 4th 547 (2004) .............................................................................................. 7

*Graham v. Scissor-Tail, Inc.*,
    28 Cal. 3d 807 (1981) .......................................................................................................... 9

*Jenks v. DLA Piper Rudnick Gray Cary US LLP*,
    243 Cal. App. 4th 1 (2015) .................................................................................................. 5

*Kinney v. United HealthCare Services, Inc.*,
    70 Cal. App. 4th 1322 (1999) ............................................................................................ 10

*Marenco v. DirecTV LLC*,
    233 Cal. App. 4th 1409 (2015) ............................................................................................ 5

**Federal Statutes**

9 U.S.C. § 1, 2, 3 et seq. .............................................................................................. *passim*

**State Statutes**

Cal. Civ. Proc. Code § 1670.5 ............................................................................................. 9

## NOTICE OF MOTION AND MOTION

TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF JAMES FIORENTINE AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Friday May 31, 2024, 2024 at 9.00 am, or as soon thereafter as the matter may be heard, before the Honorable Maxine M. Chesney in Courtroom No. 7, 19th floor, at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Marvell Semiconductor, Inc. will and hereby does move the Court for an order (1) compelling Plaintiff James Fiorentine to resolve the instant matter through binding arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4 and (2) dismissing the litigation arising from Plaintiff's Complaint, or in the alternative, staying the litigation pending the outcome of arbitration. Defendant's motion is made on the grounds that there is a valid and enforceable agreement to resolve all controversies arising out of or relating to Plaintiff's employment through binding arbitration of disputes, and the FAA compels that the parties' agreement in this regard be upheld, and that the instant litigation be dismissed, or in the alternative, stayed pending the outcome of arbitration.

The motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Declarations of Madhuri Peesapati, Blair Walters, and exhibits thereto, the papers on file in this action, oral argument at the hearing, and any other matter which the Court deems appropriate.

## CONCISE STATEMENT OF RELIEF SOUGHT

Defendant requests, pursuant to the FAA, that the Court order Plaintiff to arbitrate his claims and dismiss or stay this action.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff signed an arbitration agreement in connection with his employment at Cavium. Marvell later acquired Cavium, including the right to enforce arbitration agreements signed by Cavium employees. Accordingly, Plaintiff is obligated to arbitrate his claims against Defendant Marvell Semiconductor, Inc. All of Plaintiff's claims in this lawsuit (including discrimination, harassment, failure to accommodate, violation of FMLA and CFRA) fall squarely within the purview of the Arbitration Agreement Plaintiff signed, which requires arbitration of all disputes related to Plaintiff's employment.

## II.    RELEVANT FACTS

Cavium, Inc. hired Plaintiff in 2009 as a Strategic Sales Manager. Comp. ¶ 12. In July 2018, Marvell Technology Group Ltd. acquired Cavium, Inc. and all of its assets, debts, rights, responsibilities, liabilities, and obligations. *Declaration of Blair Walters in Support of Defendant's Motion to Compel Arbitration*, ¶ 2. Pursuant to the Merger Agreement, at closing, Cavium Inc. became a surviving subsidiary of Marvell Technology Group Ltd. *Id.* In September 2018, Cavium, Inc. was converted into a limited liability corporation and renamed Cavium, LLC. *Id.* As part of a subsequent Asset Purchase Agreement effective January 1, 2019, Defendant Marvell Semiconductor Inc, ("MSI") acquired assets from Cavium, LLC, including but not limited to any rights under Contracts.[1] *Id.* at ¶3, Ex. A. As part of the same transaction, Defendant MSI acquired Cavium, LLC's obligations and liabilities. *Id.*

Following the acquisition, the Marvell Technology Group, Ltd. family of companies and Plaintiff entered into a new Employee Agreement, which Plaintiff executed on July 26, 2018.

---

[1] Per the Asset Purchase Agreement, Contracts are defined as "all existing agreements, undertakings and contracts relating directly or indirectly to the Business which [Cavium, LLC] is a party or becomes a party to and which have not been fully performance on [January 1, 2019]". *Walters Decl.*, ¶ 3, Ex. A. Business is defined as "the business of developing, marketing and distributing storage, processing, networking, security and connectivity devices and solutions." Defendant MSI also assumed all of Cavium, LLC's liabilities and obligations in relation to Contracts. *Id.*

*Declaration of Madhuri Peesapati in Support of Defendant's Motion to Compel Arbitration*, Ex. A. The first page of Plaintiff's Employee Agreement states in relevant part "As an employee of the Marvell Technology Group Inc. family of companies, we require the signature and/or acknowledgement of various employee agreements . . . The following mandatory documents are included in this Docusign envelope for your review and completion. . . Arbitration Agreement." *Id.* at 1. Pages 3-4 of Plaintiff's Employee Agreement again confirmed:

> The Marvell Technology Group Ltd. Family of companies, including the subsidiary or affiliate with which you are employed, Cavium, Inc. ("Cavium"), (collectively referred hereto as the "Company"). . . in exchange for your employment, and all compensation you receive and will receive from Cavium, Cavium asks you to accept the terms of this Employee Agreement pursuant to which:. . .
>
> K. You agree you will arbitrate all disputes arising out of or in any way relate to your employment. . . as explained more fully in the Arbitration Agreement, which is attached hereto as <u>Exhibit D</u> to this Employee Agreement.

*Id*. at 3-4. The Arbitration Agreement in this matter was a standalone exhibit to Plaintiff's Employee Agreement and was titled "**ARBITRATION AGREEMENT."** *Id.* at 46-47 (Arbitration Agreement)(emphasis original). Under the terms of the Arbitration Agreement, Plaintiff and Cavium agreed to arbitrate:

> ALL DISPUTES ARISING OUT OF OR IN ANY WAY RELATED TO MY EMPLOYMENT WITH CAVIUM OR THE TERMINATION OF MY EMPLOYMENT, INCLUDING CLAIMS FOR BREACH OF CONTRACT, DEFAMATION, AND OTHER TORTS, DISCRIMINATION, HARASSMENT, WRONGFUL TERMINATION, WAGES OR OTHER COMPENSATION. . . OR VIOLATION OF FEDERAL STATE OR LOCAL STATUTE.

*Id.* (emphasis original). Plaintiff executed the Arbitration Agreement on July 26, 2018. *Id.*

The following month, Plaintiff received an Employment Confirmation letter, which affirmed that during Plaintiff's employment with Defendant MSI "you will continue to be subject to and agree to abide by and acknowledge all employment policies. . . including but not limited to. . . [the] Arbitration Agreement which you should have signed in July or August 2018." *Peesapati Decl.* Ex. B, at 2. Plaintiff executed this Employment Confirmation letter on August 13, 2018, explicitly agreeing that during his employment with Defendant MSI, he would continue

- 2 -
NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
CASE NO. 24-CV-01136-MMC

to be "subject to and abide by" the Arbitration Agreement he signed on July 26, 2018.

Plaintiff continued to be employed by Defendant MSI until his termination on January 24, 2023. Compl. ¶ 31.

### III. PROCEDURAL HISTORY

Prior to the filing of the lawsuit, counsel for the parties met and conferred regarding Plaintiff's obligation to submit his claims against Defendant to arbitration pursuant to the Arbitration Agreement signed by Plaintiff. The parties were unable to agree to arbitrate Plaintiff's claims and on February 23, 2024, Plaintiff filed this action, alleging state law claims for (1) age discrimination, (2) age-based harassment, (3) disability discrimination, (4) failure to provide reasonable accommodation and/or engage in the interactive process, (5) CFRA retaliation, and (6) a federal law claim for interference with FMLA rights arising out of his employment.

### IV. ARGUMENT

#### A. The FAA and U.S. Supreme Court Mandate Enforcement of the Arbitration Agreement Here.

The FAA establishes the validity and enforceability of written agreements to arbitrate disputes. 9 U.S.C. § 1 et seq. The "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (citations omitted). This purpose is readily apparent from the FAA's text. Section 2 makes arbitration agreements "valid, irrevocable, and enforceable" as written (subject to a savings clause); section 3 requires courts, at a party's request, to stay litigation of arbitral claims pending arbitration of those claims "in accordance with the terms of the agreement"; and section 4 requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of either party to the agreement.

Because arbitration is a highly favored means of settling disputes, the United States Supreme Court has held that arbitration agreements "must be rigorously enforced." *Perry v. Thomas*, 482 U.S. 483, 490 (1987). Indeed, in *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, the Supreme Court declared:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,

- 3 -

>     whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or like defense to arbitrability.

460 U.S. 1, 24-25 (1983).

Most recently, the Supreme Court emphasized that the FAA embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Concepcion*, 131 S. Ct. at 1749 (quoting *Moses H. Cone*, 460 U.S. at 24); see also *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 130 S. Ct. 1758, 1773-74 (2010) ("Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties. In this endeavor, as with any other contract, the parties' intentions control.") (citations omitted). This principle was recently reinforced by the Ninth Circuit in *Kilgore v. Keybank Nat'l Assoc.*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc) ("The FAA was intended to 'overcome an anachronistic judicial hostility to agreements to arbitrate'... that resulted in 'courts' refusals to enforce agreements to arbitrate'") (citations omitted). Accordingly, state law rules hostile to arbitration agreements are preempted by the FAA.

### B.    Defendant MSI Is Entitled to Enforce the Arbitration Agreement

As was explained to Plaintiff in the Employment Confirmation letter, (which Plaintiff signed on August 13, 2018), during the acquisition, "you will continue to be employed by your current employer, Cavium Inc., as a subsidiary of Marvell Technology Group, Ltd. In the September/October timeframe, the Cavium Inc. entity will be converted to an LLC and your employer will be Cavium LLC. This conversion will not result in any changes to your current employment terms and conditions other than your paycheck will then show Cavium LLC as your employer. On or near January 1, 2019, your employment will transfer to Marvell Semiconductor, Inc. (the "Company") and the Company will become your new employer. At that time, certain employment terms and conditions will change, as outlined in the sections below." *Peesapati Decl.*, ¶5, Ex. B. The Employment Confirmation letter further explained that after Plaintiff's transition to employment with Defendant MSI "<u>you will continue to be subject to and agree to abide</u> by and acknowledge all employment policies. . . including but not limited to. . . [the]

- 4 -
NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
CASE NO. 24-CV-01136-MMC

1  Arbitration Agreement which you should have signed in July or August 2018." *Id*. Accordingly,
2  Plaintiff specifically assented to the fact that during his employment with Defendant MSI, he
3  would "continue to be subject to and agree to abide by. . . the Arbitration Agreement" he signed
4  on July 26, 2018. *Id.*

5  As part of an Asset Purchase Agreement effective January 1, 2019, Defendant MSI
6  acquired assets from Cavium, LLC (formerly Cavium, Inc.), including but not limited to any
7  rights under "Contracts" which is defined as "all existing agreements, undertakings and contracts
8  relating directly or indirectly to the Business which [Cavium, LLC] is a party or becomes a party
9  to and which have not been fully performance on [January 1, 2019]". *Walters Decl.*, ¶ 3, Ex. A.
10 As part of the same transaction, Defendant MSI acquired Cavium, LLC's obligations and
11 liabilities. *Id.* Therefore Defendant MSI has the right to enforce the arbitration agreement Plaintiff
12 signed in connection with his employment at Cavium.

13 Defendant MSI anticipates that Plaintiff will somehow argue that MSI cannot enforce an
14 arbitration agreement that it was not a signatory to. However, there is a robust body of law
15 permitting Defendant MSI to enforce an Arbitration Agreement that it did not sign. Under
16 California contract law, "[n]onsignatory defendants may enforce arbitration agreements where
17 there is sufficient identity of parties." *Jenks v. DLA Piper Rudnick Gray Cary US LLP*, 243 Cal.
18 App. 4th 1, 8 (2015). When the identity of interest is based on a merger, the court will look to
19 whether the surviving entity (the non-signatory) "assumed all of the rights and obligations of the
20 acquired corporation" (the signatory). *See Marenco v. DirecTV LLC*, 233 Cal. App. 4th 1409,
21 1418-20 (2015) (permitting DirecTV to enforce an arbitration agreement against an employee
22 who signed an arbitration agreement with a company DirecTV had acquired— reasoning in part
23 that plaintiff had "impliedly consented to preserving the original terms of employment, including
24 the arbitration agreement."); *see also Jenks*, 243 Cal. App. 4th at 8-10 (finding *Marenco*
25 dispositive of plaintiff's argument that defendant did not have standing to enforce the arbitration
26 agreement because the firm was not a signatory to the agreement); *Delmore v. Ricoh Americas*
27 *Corp.*, 667 F. Supp. 2d 1129, 1135 (N.D. Cal 2009) (holding company could enforce arbitration
28

- 5 -
NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
CASE NO. 24-CV-01136-MMC

1  agreement of company it had acquired because it had assumed assets, debts, rights,

2  responsibilities, liabilities, and obligations of signatory company); *see also Hart v. Charter*

3  *Commc'ns, Inc.*, 814 F. App'x 211, 214 (9th Cir. 2020) (after merger where "rights, privileges and

4  powers" were transferred, successor entity had authority to enforce arbitration agreement between

5  employee and predecessor entity); *Saxena v. Mittal*, 2022 WL 4229310, at *3 (N.D. Cal. Sept. 13,

6  2022) ("[W]here, as here, a successor entity assumes the rights and obligations of an acquired

7  entity by way of a merger, the successor entity may enforce obligations entered between an

8  employee and the predecessor entity."). Under this robust body of law and pursuant to Cavium,

9  LLC and Defendant MSI's Asset Purchase Agreement, there is no doubt that Defendant MSI is

10  entitled to enforce the Arbitration Agreement in this matter.

11        Plaintiff is also equitably estopped from seeking to avoid his arbitration obligations. *See*

12  *Boucher v. Alliance Title Co., Inc.,* 127 Cal.App.4th 262, 272 (2005)(holding that decisional

13  authority on when a nonsignatory defendant may enforce an arbitration agreement "is not limited.

14  . . to cases in which a contract with a subsidiary corporation is relied upon to compel arbitration

15  with a parent entity."). Under the doctrine of equitable estoppel as applied in "both federal and

16  California decisional authority, a nonsignatory defendant may invoke an arbitration clause to

17  compel a signatory plaintiff to arbitrate its claims when the causes of action against the

18  nonsignatory are 'intimately founded in and intertwined with the underlying contract

19  obligations.'" *Id.* at 269. The central inquiry is whether a plaintiff seeks to "make use of a

20  contract containing an arbitration clause and then attempt to avoid the duty to arbitrate." *Id.* It

21  does not matter whether a plaintiff's "claims are cast in tort rather than contract." *Id.*

22        Here, Plaintiff has filed claims that are "intimately founded in and intertwined with" his

23  Employee Agreement (which contains the Arbitration Agreement). At the broadest level, all of

24  Plaintiff's claims arise out of his employment with Cavium, Inc. and subsequently Defendant

25  MSI. More specifically, the Employment Agreement contains a Code of Business Conduct and

26  Ethics (which Plaintiff specifically certified that he reviewed), which prohibits harassment,

27  discrimination and retaliation. *Peesapati Decl.*, ¶4, Ex. A, at 15-16, 32, 43 (prohibitions against

28

- 6 -
NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
CASE NO. 24-CV-01136-MMC

1  discrimination, harassment, and retaliation) and at 45 (Plaintiff's certification). Plaintiff cannot
2  both seek to invoke the protections of his Employee Agreement in filing this action against
3  Defendant MSI while seeking to avoid his arbitration obligations in the very same agreement.
4        Accordingly, Defendant MSI has the right to compel arbitration of Plaintiff's claims and
5  Plaintiff is equitably estopped from seeking to avoid these obligations.

      **C.    The Agreement Is Enforceable Under the FAA and California Law**

Whether brought under federal or state law, a motion to compel arbitration raises two threshold issues: (1) whether there is an enforceable arbitration agreement; and (2) whether the arbitration agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84 (2002); *see also Cruise v. Kroger Co.*, 233 Cal.App.4th 390, 396 (2015). Here, there can be no legitimate question that the arbitration provisions are enforceable.

      **1.    The Arbitration Agreement Covers the Plaintiff's Claims**

There is no question that the Arbitration Agreement covers this dispute. Plaintiff agreed to arbitrate all disputes arising out of or in any way related to his employment or the termination of his employment, including claims for breach of contract, defamation, and other torts, discrimination, harassment, wrongful termination, wages or other compensation. . . or violation of federal, state or local statute. *Peesapati Decl.*, ¶4, Ex. A. The "arising out of, relating to, or resulting from" language is "broad and far reaching." *Chiron Corp. v. Ortho Diagnostics Systems, Inc.*, 207 F.3d 1126, 1131 (9th Cir. 2000); *Bono v. David*, 147 Cal. App. 4th 1055, 1067 (2007) ("decision as to whether a contractual arbitration clause covers a particular dispute rests substantially on whether the clause in question is 'broad' or 'narrow.' A 'broad' clause includes those using language such as '*any claim* arising from or *related to* this agreement'"). This language is the most inclusive type of language possible and establishes intent to include all disputes. *Vianna*, 27 Cal. App. 4th at 1190; *see also Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 554 n.1 (2004) (*California Practice Guide: Alternative Dispute Resolution* "cites examples of common 'broad' versus 'narrow' arbitration clauses," and the provision "any claim arising out of or relating to" is "very broad").

1    Plaintiff's Complaint alleges age discrimination, age harassment and violations of federal
2    and state statute (FEHA, CFRA, FMLA) stemming from Plaintiff's employment. These claims
3    fall squarely within the parameters of the Arbitration Agreement, which specifically required
4    arbitration for claims of "discrimination, harassment. . . or violations of federal, state or local
5    statute." Peesapati Decl., ¶4, Ex. A.

### 2. The Arbitration Agreement Is Otherwise Enforceable

The Arbitration Agreement complies with the additional requirements identified in and is not unconscionable. *Armendariz v. Found. Health Psychcare Servs., Inc*., 24 Cal.4th 83, 90 (2000).[2]

### a. The Arbitration Agreement Complies With *Armendariz*

Under *Armendariz*, the Arbitration Agreement must meet five requirements: (1) it must permit a neutral arbitrator; (2) it cannot limit the damages and other remedies available to the employee; (3) the employee must be allowed to conduct sufficient discovery; (4) the employer cannot require the employee to bear any expense that would not be required in a court action; and (5) the arbitrator must issue a written decision that includes the essential findings and conclusions on which the award is based. *Armendariz*, 24 Cal.4th at 91, 103, 106, 110.

Here, the Arbitration Agreement satisfies all factors. First, it requires a neutral arbitrator. *Peesapati Decl.*, ¶4, Ex. A. (providing for neutral JAMS arbitrator). Second, it does not limit the damages or remedies available to Plaintiff, rather it states, "the arbitrator will apply the substantive law that would be applied by a court located where the arbitration takes place." *Id.* Third, the arbitration agreement affirms "the parties shall be afforded reasonable discovery as determined by the arbitrator and in accordance with the [JAMS Employment Arbitration Rules]." *Id.* Fourth, the Arbitration Agreement states that the employer "shall pay for the cost of the arbitrator, forum and filing fees" and any other fees "will be apportioned between the parties in accordance with said applicable law." *Id.* Finally, the Arbitration Agreement requires a "a written decision by the

---

[2] *Delmore v. Ricoh Americas Corp.* 667F.Supp.2d 1129,1135 (N.D. Cal 2009) ("In determining whether an agreement to arbitrate is valid, federal courts must apply ordinary state-law principles that govern the formation of contracts.").

- 8 -
NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
CASE NO. 24-CV-01136-MMC

arbitrator" that "essential findings and conclusions." *Id.* In sum, the Arbitration Agreement is complaint with the *Armendariz* factors.

### b. The Agreement Is Not Unconscionable

An arbitration agreement must be both procedurally and substantively unconscionable to be unenforceable. *Armendariz*, 24 Cal. 4th at 114. Here, the Arbitration Agreement is neither procedurally nor substantively unconscionable.

#### (1) There Is Little to No Procedural Unconscionability

Procedural unconscionability focuses on oppression or surprise. *24 Hour Fitness, Inc. v. Super. Ct.*, 66 Cal. App. 4th 1199, 1213 (1998); Cal. Civ. Proc. Code § 1670.5. While procedural unconscionability may arise in connection with adhesion contracts, an adhesion contract is not per se unenforceable. *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 817 (1981). In fact, the Ninth Circuit recently ruled that AB 51 (which, in relevant part, sought criminal penalties for arbitration agreements as a condition of employment) was inconsistent with and preempted by the FAA. *Chamber of Commerce of the US, et al. v. Rob Bonta, et al.,* D.C. No. 2:19-cv-02456-KJM-DB, (9th Cir. February 15, 2023).

The U.S. Supreme Court has recognized that "there often will be unequal bargaining power between employers and employees." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991). However, "mere inequality in bargaining power" does not render an employee's arbitration agreement unenforceable, and many courts have held that employers may require employees to sign arbitration agreements covering employment claims as a condition of their employment. *Id.*; *see also*, *e.g.*, *Lagatree*, 74 Cal. App. 4th at 1122-23 ("[A] predispute arbitration agreement is not invalid merely because it is imposed as a condition of employment."); *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1636 n.2 (2018) (agreements presented as conditions of continued employment are enforceable).

Here, Plaintiff cannot claim oppression or unfair surprise. In the first three-pages of the Employee Agreement (of which the Arbitration Agreement is a part), Defendant MSI explicitly flags that that an Arbitration Agreement is part of the employment package. *Peesapati Decl.*, ¶4,

- 9 -
NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION
CASE NO. 24-CV-01136-MMC

1  Ex. A. Moreover, the Arbitration Agreement itself is a standalone, single-page document with the
2  title "**ARBITRATION AGREEMENT"** (emphasis original) with six plain language provisions
3  outlining the terms of the arbitration. *Peesapati* Decl., ¶4, Ex. A. Finally, the Employee Agreement
4  encouraged Plaintiff to take time to read the entire agreement and to contract the Chief
5  Administration and Legal Officer for Defendant with "any questions or concerns" regarding the
6  terms of the agreement. *Id.*

### (2) There Is No Substantive Unconscionability

8  There also is no substantive unconscionability here. Substantive unconscionability
9  requires that the agreement's terms are "overly harsh or one-sided." *Concepcion*, 563 U.S. at 340
10 (citing *Armendariz*, 24 Cal.4th at 114). An arbitration agreement qualifies as substantively
11 unconscionable when its terms are "so one-sided as to shock the conscience." *Kinney v. United*
12 *HealthCare Services, Inc.*, 70 Cal. App. 4th 1322, 1329 (1999).

13 None of the other terms in the arbitration agreement are "so one-sided as to shock the
14 conscience." Instead, the Arbitration Agreement requires a neutral arbitrator, requires the
15 arbitration be conducted under the well-established JAMS rules for employment disputes, requires
16 that the arbitration take place in a venue where Plaintiff was employed, and allows for mutual
17 discovery. And as noted above, the Arbitration Agreement satisfies the *Armendariz* factors. The
18 fair, reasonable, and entirely vanilla terms of this arbitration agreement come nowhere close to the
19 "shock the conscience" standard. *Kinney*, 70 Cal. App. 4th at 1329. By its very terms and under
20 governing law, the Arbitration Agreement is not substantively unconscionable as a matter of law.

### D. The Entire Litigation Must Be Dismissed

22 The Court has discretion to dismiss the action in its entirety, rather than stay the action as
23 permitted under FAA § 3, where all of the claims asserted in the complaint must be submitted to
24 arbitration, as is the case here. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir.
25 1988) (district court has discretion to dismiss claims subject to arbitration where plaintiff required
26 to submit all claims to arbitration); *Shappell v. Sun Life Assurance Co.*, No. 2:10-cv-03020-MCE-
27 EFB, 2011 WL 2070405 (E.D. Cal. May 23, 2011) (lawsuit properly subject to dismissal where

plaintiff's claims against employer are subject to arbitration). Here, Plaintiff agreed to binding arbitration of all claims pertaining to his employment with Defendant MSI.

Because all the claims for relief asserted in this lawsuit fall within the scope of the Arbitration Agreement, the Court should dismiss Plaintiff's action in its entirety rather than issue a stay.

## V. CONCLUSION

For all of the foregoing reasons, Defendant respectfully requests that this Court grant its Motion to Compel Arbitration of this matter, order that Plaintiff must arbitrate his claims against Defendant MSI and dismiss the action.

Dated: March 21, 2024                     ORRICK, HERRINGTON & SUTCLIFFE LLP

                                          By: /s/ Melinda Riechert
                                              MELINDA S. RIECHERT
                                              JILLIAN V. KALTNER
                                              Attorneys for Defendant
                                              MARVELL SEMICONDUCTOR INC.