IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JAMES FIORENTINE,

Plaintiff,

v.

MARVELL SEMICONDUCTOR INC.,

Defendant.

Case No.  24-cv-01136-MMC

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION; STAYING ACTION**

Before the Court is defendant Marvell Semiconductor Inc.'s ("MSI") Motion, filed March 31, 2024, "to Compel Arbitration and to Dismiss, or in the Alternative, Stay Proceedings."  Plaintiff James Fiorentine ("Fiorentine") has filed opposition, to which MSI has replied.  Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

In his Complaint, Fiorentine alleges he began working for Cavium, Inc. in 2009, and that he "became a Marvell [MSI] employee" when, in 2018, it "acquired" his former employer.  (See Compl. ¶ 12.)  According to Fiorentine, his supervisor at MSI told him in January 2023 that his position, "Senior Sales Manager," had been "eliminated" (see Compl. ¶¶ 1, 13, 31) which termination, he states, was unlawful under the California Fair Employment and Housing Act ("FEHA"), because it was on account of his age, which was 67 at the time of the termination (see Compl. ¶¶ 36-37) and also on account of a disability, described by Fiorentine as a "serious heart condition that required

---

[1] By order filed May 28, 2024, the Court took the matter under submission.

hospitalization multiple times" (see Compl. ¶¶ 61, 64).  Additionally, Fiorentine alleges, the termination was unlawful under the federal Family and Medical Leave Act and the California Family Rights Act, because it was on account of his "need to take medical leave to deal with his health condition."  (See Compl. ¶¶ 85, 97.)  Fiorentine further alleges that, during his employment, MSI violated FEHA by subjecting him to "near-daily harassment based on his age" (see Compl. ¶ 51), and by failing to provide a "reasonable accommodation," namely, a "leave of absence" to allow him to address his "medical issues" (see Compl. ¶ 73).

## DISCUSSION

By the instant motion, MSI contends Fiorentine's claims are, under the Federal Arbitration Act ("FAA"), subject to arbitration.

The FAA provides as follows:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

See 9 U.S.C. § 3.  Under the FAA, a district court's role is to determine "if a valid arbitration agreement exists," and, "if so, whether the agreement encompasses the dispute at issue."  See Davis v. Nordstrom, Inc., 755 F.3d 1089, 1092 (9th Cir. 2014).

Here, MSI relies on the following language, contained in a document titled "Arbitration Agreement":

> Cavium, Inc. ("Cavium") and I agree that all disputes arising out of or in any way related to my employment with Cavium or the termination of my employment, including claims for breach of contract, defamation and other torts, discrimination, harassment, wrongful termination, wages or other compensation (including misclassification and overtime claims) or violation of federal, state or local statute and all related penalties, shall be resolved through final, binding arbitration, as provided below.  Both Cavium and I expressly waive our right to a jury trial and to file such claims in court.  Cavium and I waive the right to initiate, join, or participate in a class, collective or representative action.  This arbitration agreement excludes

claims for workers compensation, state or federal unemployment insurance, charges filed with administrative agencies such as the Equal Employment Opportunity Commission and U.S. Department of Labor, and claims that by law cannot be subject to mandatory arbitration.[2]

(See Peesapati Decl. Ex. A at 50.)[3]  The Arbitration Agreement, which provides it is "governed by the [FAA]," is denominated "Exhibit D" (see id.) to an "Employee Agreement" between Cavium, Inc. and Fiorentine (see id. Ex. A at 7).  Fiorentine signed the Employee Agreement, as well as the attached Arbitration Agreement, on July 28, 2018.  (See id. Ex. A at 13, 51).

As each of Fiorentine's claims arises out of his employment or his termination, the Arbitration Agreement encompasses the dispute at issue.  Fiorentine argues, however, (1) the Arbitration Agreement is not enforceable for the reason it was not signed by Cavium, Inc., his initial employer, (2) MSI, his subsequent employer, is not a party to the Arbitration Agreement or otherwise able to assert any rights thereunder, and (3) the Arbitration Agreement is unconscionable, and, consequently, invalid.  The Court considers Fiorentine's arguments in turn.

**A.  Lack of Employer's Signature**

The Arbitration Agreement, which, as noted, is an exhibit to the Employee Agreement, only has a space for the "Employee" to sign and print his/her name (see Peesapati Decl. Ex. A at 51), and, although the Employee Agreement includes a place for both the "Employee" and a "Cavium Representative" to sign, the Employee Agreement was not signed by a "Cavium Representative" (see Peesapati Decl. Ex. A at 13). According to Fiorentine, the lack of a signature by Cavium, Inc. "creates [a] lack of mutuality."  (See Pl.'s Opp. at 17:17-18.)

---

[2] The entirety of the above-quoted language is set forth in the Arbitration Agreement in capital letters.  (See Peesapati Decl. Ex. A at 50.)

[3] In citing to the Arbitration Agreement, as well as to all other exhibits offered by either party, the Court has used herein the page number affixed to the top of each page by this district's electronic filing program.

1    Under California law,[4] however, "a writing memorializing an arbitration agreement

2  need not by signed by both parties in order to be upheld as a binding arbitration

3  agreement." Serafin v. Balco Properties Ltd., LLC, 235 Cal. App. 4th 165, 176 (2015).

4  "[It is not the presence or absence of a *signature* on an agreement which is dispositive; it

5  is the presence or absence of evidence of an *agreement* to arbitration which matters." Id.

6  (emphases in original; internal quotation, alteration, and citation omitted).  "Evidence

7  confirming the existence of an agreement to arbitrate, despite an unsigned agreement,

8  can be based, for example, on conduct from which one could imply either ratification or

9  implied acceptance of such a provision." Id. (internal quotation and citation omitted).

10    Here, MSI submits evidence, undisputed by Fiorentine, that, in July 2018, Marvell

11  Technology Group Ltd. acquired Cavium, Inc. (see Walters Decl. ¶ 2), and that, as part of

12  such acquisition, "Cavium Inc. employees were required to review and sign an

13  employment agreement" (see Peesapati Decl. ¶ 4).  The introductory paragraph of the

14  Employee Agreement states that, "in exchange for your employment, and all

15  compensation you receive and will receive from Cavium, Cavium asks you to accept the

16  terms of this Employee Agreement" (see id. Ex. A at 7), one of which, as quoted earlier

17  herein, is that both Cavium, Inc. and the employee, here, Fiorentine, will be required to

18  arbitrate any dispute arising out of or related to the employment relationship or

19  termination thereof (see id. Ex. A at 50).

20    Courts have found similar evidence suffices to show an employer is a party to an

21  Arbitration Agreement it did not sign.  In Sweeney v. Tractor Supply Co., 390 F. Supp. 3d

22  1152 (N.D. Cal. 2019), for example, the district court held that an arbitration agreement

23  signed only by the employee was not rendered invalid by the employer's lack of

24  signature, where the evidence presented sufficiently "indicate[d] [the employer's] intent to

25  be bound," in that the arbitration agreement was part of the "onboarding process" for new

26  ――――――――――――

27    [4] For purposes of the FAA, "courts must apply ordinary state-law principles that govern the formation of contracts." See Wolsey, Ltd. v. Foodmaker, Inc., 144 F.3d 1205,

28  1210 (9th Cir. 1998).

1  employees, and the agreement "explicitly state[d] it applied to both [the employer] and its

2  employees."  See id. at 1158.  Similarly, in Fuentes v. Empire Nissan, Inc., 90 Cal. App.

3  5th 919 (2023), review granted, August 9, 2023, S280256, the California Court of Appeal

4  rejected the employee's argument that, where only the employee signed an arbitration

5  agreement, there was "a lack of mutuality," concluding the employer "certainly assented

6  to its own arbitration agreement," which it had "drafted and required [the employee] to

7  sign" and was "trying to enforce."  See id. at 933.

8         Accordingly, in light of the above-cited authority, the Court finds the lack of

9  Cavium, Inc.'s signature on the Employee Agreement and the attached Arbitration

10  Agreement does not render the Arbitration Agreement invalid for lack of mutuality.

11  **B.  Ability of MSI to Enforce Arbitration Agreement**

12         It is undisputed that, in September 2018, "Cavium, Inc. was converted into a

13  limited liability corporation and renamed Cavium, LLC" (see Walters Decl. ¶ 2), and that,

14  on January 1, 2019, MSI and Cavium, LLC entered into an "Asset Purchase Agreement,"

15  under which Cavium, LLC transferred to MSI its "right, title and interest in and to [its]

16  Assets," which assets included Cavium, LLC's "rights arising under [its] Contracts"[5] (see

17  id. Ex. A at 5-6).

18         Fiorentine first argues that Cavium, LLC, as opposed to Cavuim, Inc., was never a

19  party to the Arbitration Agreement, and, consequently, the "Contracts" obtained by MSI

20  by reason of the Asset Purchase Agreement do not include the Employee Agreement or

21  the agreements attached thereto, such as the Arbitration Agreement.

22         Under Delaware law,[6] however, "[w]hen another entity" has been "converted to a

23  limited liability company," the LLC "shall be deemed to be the same entity as the

24

25       [5] The Asset Purchase Agreement defines "Contracts" as "all existing agreements,

26  undertakings and contracts relating directly to or indirectly to the [b]usiness to which
Seller [Cavium, LLC] is a party or becomes a party to and which have not been fully

27  performed on the [date of the sale]."  (See id. Ex. A at 6.)

28       [6] Cavium, LLC is a Delaware corporation.  (See id. Ex. A at 5.)

United States District Court
Northern District of California

1  converting other entity and the conversion shall constitute a continuance of the existence

2  of the converting other entity in the form of a domestic limited liability company."  See

3  Del. C. § 18-214(g).  In particular, "all of the rights, privileges and powers of the other

4  entity that has converted, and all property, real, personal and mixed . . . shall remain

5  vested in the domestic limited liability company to which such other entity has converted."

6  See Del. C. § 18-214(f).  Consequently, the Employee Agreement and the attached

7  Arbitration Agreement became, as a matter of law, the property of Cavium, LLC upon the

8  conversion of Cavium, Inc. to Cavium, LLC.

9         Fiorentine next cites a clause in the Arbitration Agreement providing that a

10  "modification of or amendment to" the Employee Agreement must be "in writing signed by

11  the party to be charged" (see Peesapati Decl. Ex. A at 11), and, in reliance thereon,

12  asserts that Cavium, LLC never became a party to the Arbitration Agreement due to the

13  lack of such writing.  Although not clearly expressed, Fiorentine appears to argue that the

14  above-quoted modification clause overrides the Delaware law cited above.  Fiorentine

15  fails to explain, however, how such interpretation of the Employee Agreement would be

16  reasonable, particularly given that the agreement itself expressly provides said

17  agreement "will be for the benefit of the Company, its successors, and its assigns."  (See

18  id. Ex. A at 12.)[7]

19         Likewise unavailing is Fiorentine's citation to the principle that, under California

20  law, the "'language of a contract is to govern its interpretation, if the language is clear and

21  explicit.'"  See Duran v. EmployBridge Holding Co., 92 Cal. App. 5th 59, 66 (2023)

22  (quoting California Civil Code § 1638).  In reliance thereon, Fiorentine argues MSI, which

23  entity Fiorentine alleges and MSI has not disputed "is a California corporation" (see

24  Compl. ¶ 6), cannot enforce the Arbitration Agreement because MSI is not a named party

25  thereto.  Under California law, however, where an employer assumes the rights and

26

27         [7] "Company" is defined in the Employee Agreement as "[t]he Marvell Technology Group Ltd. family of companies, including the subsidiary or affiliate with which you are
28  employed, Cavium, Inc."  (See id. Ex. A at 7.)

United States District Court
Northern District of California

obligations of a predecessor employer, the successor employer may enforce an arbitration agreement between the predecessor employer and the employee, at least where the arbitration agreement has not been "extinguished, rescinded, altered, or revised" and the employee "continue[s]" to work for the successor employer.  See Marenco v. DirecTV LLC, 233 Cal. App. 4th 1409, 1420 (2015) (citing principle that "voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting").

Here, Fiorentine, on August 18, 2018, was advised by MSI that, once it acquired Cavium LLC, it would become Fiorentine's "new employer," and that Fiorentine would "continue to be subject to" the Arbitration Agreement he previously signed.  (See Peesapati Decl. ¶ 5, Ex. B at 64-65.)  Fiorentine does not assert that, at any time, Cavium, Inc., Cavium, LLC, or MSI extinguished, rescinded, altered, or revised the Arbitration Agreement he signed on July 28, 2018.  Further, after MSI's acquisition of Cavium, LLC, Fiorentine continued to work for MSI for several years.  (See Compl. ¶¶ 12, 31 (alleging Fiorentine worked for MSI upon its acquisition of "Cavium" and continued to do so until his employment with MSI was terminated in January 2023).)

Accordingly, MSI, although not a party to the Arbitration Agreement when it was signed by Fiorentine, has standing to enforce its terms.

**C. Unconscionability**

Lastly, as noted, Fiorentine argues the Arbitration Agreement is not valid on the ground it is unconscionable.

"Under California law, courts may refuse to enforce any contract found to have been unconscionable at the time it was made, or may limit the application of any unconscionable clause." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 340 (2011) (internal quotation and citation omitted).  "A finding of unconscionability requires a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." Id. (internal

United States District Court
Northern District of California

United States District Court
Northern District of California

1  quotation and citation omitted).  The two elements, however, "need not be present in the

2  same degree; "the more substantively oppressive the contract term, the less evidence of

3  procedural unconscionability is required to come to the conclusion that the term is

4  unenforceable, and vice versa."  See Armendariz v. Foundation Health Psychcare

5  Services, Inc., 24 Cal. 4th 83, 114 (2000).

6  **1.  Procedural Unconscionability**

7  Procedural unconscionability is present where "a party has no meaningful

8  opportunity to negotiate terms or the contract is presented on a take it or leave it basis."

9  See Wherry v. Award, Inc., 192 Cal. App. 4th 1242, 1246 (2011).

10  Here, Fiorentine has offered evidence, undisputed by MSI, that a Cavium, Inc.

11  "manager," on July 26, 2018, told Fiorentine he "had to sign" some "documents,"

12  including the Arbitration Agreement, and that "they were 'due' by a certain time that day."

13  (See Fiorentine Decl. ¶ 3.)  Based on said comments, Fiorentine states he understood he

14  "did not have the option of trying to negotiate them" and that he "would lose [his] job" if he

15  did not sign them.  (See id.)  In light of such evidence, the Court finds the "procedural

16  element of an unconscionable contract" is established.  See Little v. Auto Stiegler, Inc.,

17  29 Cal. 4th 1064, 1071 (2003) (holding "procedural element" established where employer

18  "impose[s] on [employee] an adhesive arbitration agreement"; observing "few employees

19  are in a position to refuse a job because of an arbitration requirement") (internal quotation

20  and citation omitted).[8]

21  _____

22  [8] To the extent Fiorentine argues unconscionability is further shown by MSI's
   failure to provide him with a copy of the Asset Purchase Agreement at the time it was
23  executed, the Court disagrees.  Although Fiorentine asserts that, had MSI filed a lawsuit
   and he wanted to compel arbitration, he could not have done so without having said
24  Agreement as evidence to show MSI succeeded to the contractual rights of his prior
   employer, it is undisputed that MSI advised him, shortly before MSI became his
25  employer, that the terms of his employment with MSI would include the provisions of the
   Arbitration Agreement (see Peesapati Decl. Ex. B at 65), thereby indicating MSI likewise
26  was bound thereby.  Further, if MSI had filed a lawsuit and any question arose as to
   whether it was bound by the Arbitration Agreement, Fiorentine would have been entitled
27  to obtain the Agreement in discovery.  See, e.g., Knapke v. PeopleConnect, Inc., 38 F.4th
   824, 832-33 (9th Cir. 2022) (holding, where factual dispute existed, district court erred in
28  denying request for discovery to determine whether plaintiff was bound by agreement).

**2. Substantive Unconscionability**:

Fiorentine argues the Arbitration Agreement and a related agreement contain unconscionable terms.  The Court considers these arguments in turn.

**a. Prohibition of "Representative" Actions**

Fiorentine argues the following provision in the Arbitration Agreement is, in part, unconscionable:  "I waive the right to initiate, join, or participate in a class, collective or representative action."  (See Peesapati Decl. Ex. A at 50.)  Specifically, Fiorentine asserts, said provision is unconscionable to the extent it prohibits him from bringing a "representative" action under the Private Attorneys General Act ("PAGA").  As Fiorentine points out, the California Supreme Court has held prohibition of an employee's ability to bring a "representative action[ ]," when contained in an arbitration agreement, includes prohibition of such employee's ability to bring a PAGA action, see Iskanian v. CLS Transportation Los Angeles, LLC, 59 Cal. 4th 348, 378 (2014), and that, although an arbitration agreement requiring arbitration of "individual" PAGA claims is enforceable, "a prohibition of representative [i.e., non-individual] claims frustrates the PAGA's objectives," see Adolph v. Uber Technologies, Inc., 14 Cal. 5th 1104, 117-18 (2023) (internal quotation and citation omitted; internal parenthetical in original).

As MSI points out, however, the Arbitration Agreement also provides that it "excludes" claims that "by law cannot be subject to mandatory arbitration" (see Peesapati Decl. Ex. A at 50), e.g., representative PAGA claims.  Consequently, the Arbitration Agreement cannot reasonably be interpreted as prohibiting Fiorentine from filing in court a representative, i.e., non-individual, PAGA claim.

Accordingly, the Court finds the Arbitration Agreement's prohibition of representative actions is, in light of the exception thereto, not unconscionable.

**b. MSI's Ability to File Court Action**

As noted, the Arbitration Agreement requires MSI and Fiorentine to pursue in arbitration "all disputes arising out of or in any way related to [Fiorentine's] employment" or "the termination of [his] employment."  (See id.)  Such provision is, on its face,

1
2   bilateral.  Fiorentine argues, however, said provision is not bilateral when read in the light
    of a provision contained in a separate agreement.

3       In that regard, Fiorentine relies on a provision in an agreement titled "Employee
4   Confidentiality Information and Inventions Assignment Agreement" ("ECIIA"), signed by
5   Fiorentine and an officer of Cavium, Inc. in 2009, which agreement requires Fiorentine to,
6   inter alia, "hold in confidence" and "not disclose, use, lecture upon, or publish any of
7   Company's[9] [c]onfidential [i]nformation."  (See Fiorentine Decl. Ex. A at 5.)  The particular
    provision cited by Fiorentine provides, in a section titled "Governing Law and Venue," as
8
9   follows:  "I hereby expressly consent to the personal jurisdiction and venue in the state
10  and federal courts for the county in which Company's principal place of business is
11  located for any lawsuit filed there against me by Company arising from or related to this
12  Agreement."  (See id. Ex. A at 6, § 7.1 (hereinafter, "Venue Provision").)  Fiorentine
13  argues that, under said provision, MSI, as successor to Cavium, Inc., "reserv[es] for itself
14  the right to sue [Fiorentine] in court for all claims under the ECIIA rather than agreeing to
15  bring those claims in arbitration."  (See Pl.s' Opp. at 18:19-21.)

16      In determining whether Fiorentine's interpretation of the Venue Provision is
17  reasonable, the Court first observes that when MSI advised Fiorentine it would become
18  his employer "[o]n or near January 1, 2019," MSI stated the "terms of [his] employment"
19  would include, inter alia, the terms set forth in "the previously signed Employee
20  Agreement, which contains the . . . Arbitration Agreement," as well as the terms in the
21  "ECIIA" he "signed at Cavium."  (See Peesapati Decl. Ex. B at 65-66.)  As the Arbitration
22  Agreement and the ECIIA, along with other documents, constitute the terms of
23  Fiorentine's employment with MSI, said writings must be interpreted "together," see Cal.
24  Civ. Code § 1642 (providing "[s]everal contracts relating to the same matters, between
25  the same parties, and made as parts of substantially one transaction, are to be taken
26
27          [9] "Company" is defined in the ECIIA as "Cavium Networks."  (See Fiorentine Decl.
28  Ex. A at 5.)

10

1   together"), and, consequently, any unconscionable terms in the ECIIA can be considered

2   by the Court in determining whether the Arbitration Agreement is unenforceable, see,

3   e.g., Alberto v. Cambrian Homecare, 91 Cal. App. 5th 482, 492-96 (2023) (affirming trial

4   court's finding that, where arbitration agreement contained one unconscionable term and

5   separate confidentiality agreement contained two unconscionable terms,

6   "unconscionability permeated the arbitration agreement").

7        When interpreting "different contracts relating to the same matter between the

8   same parties," courts, with an "awareness that federal and California law strongly favor"

9   arbitration, "aim to make the parts into a consistent and sensible whole" and "search for a

10  lawful and reasonable interpretation."  See Fuentes, 90 Cal. App. 5th at 931.  Here, in

11  interpreting the two agreements together, the Court notes that, as discussed above,

12  Cavium, Inc. and Fiorentine entered into the ECIIA in 2009, almost ten years before

13  those parties entered into the Arbitration Agreement, and, under such circumstances, it is

14  readily apparent that the terms of the ECIIA could not have been intended to supersede

15  or alter the Arbitration Agreement.  The Court next turns to the question of whether the

16  Venue Provision nonetheless alters the bilateral quality of the Arbitration Agreement.

17       Fiorentine alleges, and MSI has not disputed, that MSI's "principal place of

18  business is in Santa Clara County, California."  (See Compl. ¶ 9.)  In light thereof, the

19  Venue Provision requires Fiorentine to consent to personal jurisdiction and venue in a

20  court in Santa Clara County, California, when a "lawsuit" alleging a violation of the ECIIA

21  is brought in that county.  The Arbitration Agreement, however, requires MSI to bring all

22  claims arising from or related to Fiorentine's employment in an arbitral forum, which

23  claims necessarily would include claims alleging violations of the ECIIA, as the provisions

24  of the ECIIA constitute terms of Fiorentine's employment with MSI and claims for

25  violations of the ECIIA are not included in the list of claims "exclude[d]" from arbitration.

26  See Peesapati Decl. Ex. A at 50 (providing "claims for workers compensation, state or

27  federal unemployment insurance, charges filed with administrative agencies . . . and

28  claims that by law cannot be subject to mandatory arbitration").  Under such

United States District Court
Northern District of California

11

1    circumstances, the Court interprets the Venue Provision as applying in only two limited

2    situations.

3         First, under California law, any party to an arbitration agreement may file a court

4    action for the limited purpose of seeking "a provisional remedy in connection with an

5    arbitrable controversy." See Cal. Code Civ. Proc. § 1281.8(b).[10]  Consequently, if MSI

6    were to file such an action in Santa Clara County, based on an alleged violation of the

7    ECIIA, the Venue Provision would apply and Fiorentine would be required to consent to

8    personal jurisdiction and venue in such court for the limited purpose of a determination as

9    to such request for a provisional remedy.  The resolution of the actual merits of any such

10   claim, however, would be resolved in arbitration as required by the Arbitration

11   Agreement.

12        Second, in the event MSI were to file a court action in Santa Clara County alleging

13   a violation of the ECIIA and seeking relief beyond provisional remedies, and Fiorentine

14   elected not to seek to compel arbitration, i.e., if neither party chose to rely on the

15   Arbitration Agreement, the Venue Provision would apply, and Fiorentine would be

16   required to consent to personal jurisdiction and venue in said court.

17        In sum, the Court finds Fiorentine's interpretation of the Venue Provision is not

18   reasonable, and, given said provision's narrow application, finds Fiorentine has not

19   shown the Venue Provision is unconscionable.

20              c.  **Entitlement to Injunction**

21        The ECIIA, in a section titled "Injunctive Relief," includes the following provision:  "I

22   acknowledge that, because my services are personal and unique and because I will have

23   access to the [c]onfidential [i]nformation of [MSI], any breach of this Agreement by me

24   would cause irreparable injury to [MSI] for which monetary damages would not be an

25

26        _____

27        [10] As used in § 1281.8, the term "provisional remedies" comprises four forms of
     relief: (1) "[a]ttachments and temporary protective orders," (2) "[w]rits of possession,"
     (3) "[p]reliminary injunctions and temporary restraining orders," and (4) "[r]eceivers."  See
28   Cal. Code Civ. Proc. § 1281.8(a).

United States District Court
Northern District of California

1   adequate remedy and, therefore, will entitle [MSI] to injunctive relief (including specific

2   performance)." (See Fiorentine Decl. Ex. A at 7 (hereinafter, "Irreparable Injury

3   Provision").)  In other words, as to a claim by MSI for injunctive relief based on an alleged

4   violation of the ECIIA, the section entitles MSI to an injunction without the need to offer

5   any evidence, including evidence of irreparable injury, other than evidence of a breach.

6        Courts to have considered whether such a provision in an arbitration agreement is

7   unconscionable have found it is, and this Court agrees.  See, e.g., Lange v. Monster

8   Energy Co., 46 Cal. App. 5th 436, 451 (2020) (holding provision in arbitration agreement

9   "granting [employer] predispute relief from having to establish all of the essential

10  elements for the issuance of an injunction" unconscionable; finding "no legitimate

11  commercial need" exists to support provision) (internal quotation and citation omitted);

12  Alberto, 91 Cal. App. 5th at 492-93 (finding provision in arbitration agreement requiring

13  employee "to agree in advance to the existence of irreparable injury" was

14  "unconscionable"); Carmona v. Lincoln Millenium Car Wash, Inc., 226 Cal. App. 4th 74,

15  89 (2014) (holding "arbitration agreement lacks mutuality when it presumes harm to the

16  [employers] in their confidentiality claims" and "does not state a reciprocal presumption of

17  harm favoring employees in their claims").

18        Accordingly, the Court finds the Injunctive Relief Provision is unconscionable.

19        **d. Severance**

20        As the Arbitration Agreement is procedurally unconscionable to the extent it is

21  mandatory and as it also contains one substantively unconscionable term, the Court next

22  addresses whether the substantively unconscionable term is severable.  See

23  Concepcion, 563 U.S. at 339 (2011) (holding, "[u]nder California law," courts "may limit

24  the application of any unconscionable clause") (internal quotation and citation omitted);

25  Cal. Civ. Code § 1670.5 (providing where court finds "contract or any clause of the

26  contract to have been unconscionable at the time it was made[,] the court may refuse to

27  enforce the contract, or it may enforce the remainder of the contract without the

28  unconscionable clause").

1    Severance of an unconscionable term is not, however, appropriate where a court

2  "would have to, in effect, reform the contract" in order to preserve the rest of the

3  agreement or where the "central purpose of the contract is tainted with illegality."  See

4  Armendariz, 24 Cal. 4th at 125; see also, e.g., Bridge Fund Capital Corp. v. Fastbucks

5  Franchise Corp., 622 F.3d 996, 1006 (9th Cir. 2010) (applying California law; finding

6  arbitration agreement unenforceable where severance of "offending provisions would

7  have left almost nothing to the arbitration clause").

8    Here, no reformation or rewriting is necessary, as severance of the Irreparable

9  Injury Provision will serve to maintain an otherwise valid agreement, the central purpose

10  of which is to resolve all employment-related claims by arbitration.  See Armendariz, 24

11  Cal. 4th at 124 (noting "doctrine of severance attempts to conserve a contractual

12  relationship if to do so would not be condoning an illegal scheme").  The Court thus finds

13  severance of the challenged provision appropriate and, in its absence, finds the

14  Arbitration Agreement is not substantively unconscionable.

15    As noted above, a finding of unconscionability requires both "a procedural and a

16  substantive element."  See Concepcion, 563 U.S. at 340.  Consequently, the Arbitration

17  Agreement is not unenforceable on grounds of unconscionability.

18                                    **CONCLUSION**

19    For the reasons stated above, the Court finds the Arbitration Agreement is

20  enforceable by MSI.

21    Accordingly, MSI's motion to compel arbitration is hereby GRANTED, and the

22  instant action is hereby STAYED pending completion of arbitration proceedings.

23    **IT IS SO ORDERED.**

24

25  Dated: June 14, 2024

26                                                    MAXINE M. CHESNEY
                                                    United States District Judge

27

28